THE TOWN OF HUNTINGTON, Appellant, *v.* ANDRUS L. TITUS and
ADELAIDE TITUS, his Wife, Respondents.

*Where some only of several provisions of an agreement are, in terms, made "condi-
tions," the others will be held not to be — compliance required within a reasonable
time — Statute of Limitations — presumption of waiver from a failure to enforce
— stale provisions not enforced by equity.*

The trustees of the town of Huntington, in 1774, granted to an individual the
right to erect a dam in Centreport harbor, in consideration of which the gran-
tee agreed, among other things, to make and forever maintain upon the top of
the dam a crossway eighteen feet wide for the passage of ox carts and teams,
to build a grist mill and to grind all the grain which the country people should
bring. The grant further provided that if the grantee should not build the
mill, and if he or his successors should fail to maintain it or refuse to grind
all the grain of the country people as aforesaid, then "this present grant shall
be absolutely null, void and none effect, and all the privileges aforementioned
shall revert to the said trustees and their successors," but made no mention in
that connection of the covenant to make and maintain the eighteen-foot
crossway.

*Held,* that it was not the intention of the parties to the grant to make the cove-
nant to build the crossway a condition subsequent, upon the failure to perform
which the grant would become forfeited;

That the right to enforce the construction of the crossway accrued upon the
grantee's failure to construct it within a reasonable time, and, it seems, was
barred by the failure of the town to assert such right for 125 years;

That, as the town had never attempted to enforce performance of the covenant
or made any complaint because of the non-performance thereof, it would be
presumed that, for a sufficient consideration, it had waived its right to specific
performance; that, at all events, it was the duty of the town to explain its
non-action and silence;

That, independent of the question of the Statute of Limitations and waiver, the
court would, in the exercise of its discretion, refuse to compel the specific per-
formance of the covenant.

APPEAL by the plaintiff, The Town of Huntington, from a final
judgment of the Supreme Court in favor of the defendants, entered
in the office of the clerk of the county of Suffolk on the 4th day of
August, 1899, upon the decision of the court rendered after a trial
at the Kings County Special Term.

*Willard N. Baylis* [*Edward R. Ackerly* with him on the brief],
for the appellant.

*Rowland Miles,* for the respondents.

PER CURIAM:

The very full and satisfactory consideration of the law and facts of this case by the learned judge at Special Term renders any further discussion thereof in this court unnecessary; and we are quite content to affirm the judgment for the reasons given by Mr. Justice WILMOT M. SMITH, with a single qualification which in nowise affects his conclusions. We doubt whether any distinction can be recognized by the courts growing out of the fact that a party is morally an innocent purchaser if he be not an innocent purchaser in the eyes of the law. This characterization of the defendant in the Special Term opinion, however, is merely incidental to the argument showing that it would be most unjust at this time to enforce the town's claim against him, and it in no respect impairs the validity of that argument.

All concurred.

Judgment affirmed, with costs, upon the opinion of WILMOT M. SMITH, J., at Special Term.

The following is the opinion of SMITH, J., at Special Term:

SMITH, J.:

On January 14, 1774, the trustees of the town of Huntington made a grant to one Sylvanus Townsend, his heirs and assigns forever, of certain interests at Centreport harbor, described in the grant as follows: "The rights, liberties and previledges hereafter mentioned, to wit: of building, making and running of a dam to dam the water to begin at or near about the North or Northeast Point of the land that the said Silvanus Townsend bought of Philip Udale, near the house of Hezekiah wickes, and from thence to run North about seventy-two degrees east over to the point called Jacob Platts point of upland where the said Townsend hath concluded to build the said dam and to raise the said dam as high as he, the said Townsend shall judge most convenient, and full & free liberty to erect or build a mill or mills on the said dam or below the same * * * with free liberty to dam and confine the water above the mill dam and to improve the same."

In consideration of such grant the said Townsend agreed upon his

part to build a good grist mill on the dam, also to make a good and sufficient dam or crossway across the harbor to the upland, to be eighteen feet wide at the top all the way for ox carts and teams to pass and repass at all times of tide, and to maintain it good forever; to make a good public highway three rods wide from the bank all the way down to the landing below the grist mill, and at or near the said landing to leave a piece of land sufficient to lay all the cordwood that should ever be brought there, and also to make a good crossway over the little cove near said landing sufficient for ox carts and teams to pass and repass, and always to keep a good miller and grind all the grain which the country people should bring; that he would not hinder any person from fishing, oystering or clamming or gunning in the mill pond, or hinder any person from passing on the dam, and that he should grind all the grain brought to the mill for a toll of one-tenth of grain and rye and one-twelfth of all wheat.

The defendant Andrus L. Titus has succeeded to the rights granted to the said Townsend, and is now in possession of and claims to be the owner of the same.

The agreement made by Townsend to maintain a crossway eighteen feet wide upon the top of the dam for the passage and repassage of ox carts and teams has not been observed within the memory of man; and the evidence taken upon the trial justifies the conclusion, and I so find, that the crossway has never, from the time of the making of the grant to the present time, been made eighteen feet wide at the top and in a condition for carts and teams to pass and repass.

The claim of the plaintiff is that these covenants and agreements made by Townsend above referred to were conditions subsequent, and that upon the failure to perform any one of them, the grant became forfeited to the town of Huntington; and this action is brought to enforce such forfeiture, and if the court should find that the covenants are not conditions subsequent they ask for a specific performance of the covenant to make and maintain an eighteen-foot crossway, that being the covenant, which it is alleged has never been performed by Townsend or by his successors in title.

I decide that the covenant to maintain an eighteen-foot crossway is not a condition subsequent, because the grant itself provides that "in case it should so happen that the said Silvanus Townsend should

not go on to build a mill or mills at the place aforementioned, and should at any time hereafter fail, he or his heirs, successors or assigns of keeping a good mill or mills  *  *  *  and should fail, neglect or refuse to grind all the grain of the country people as aforesaid, that then in that case this present grant shall be absolutely null, void and none effect, and all the priveledges aforementioned shall revert to the said trustees and their successors."

Inasmuch as some of the covenants made by Townsend are specified as conditions upon failure to perform which the grant should be forfeited, and there is no mention in that connection of the covenant to make and maintain the eighteen-foot crossway, I conclude that it was not the intention of the parties to the agreement to make the performance of that covenant a condition subsequent.

The defendant claims that an action to enforce the covenant referred to is barred by the Statute of Limitations; that the town has failed to assert its right to have the covenant performed for 125 years, ever since the making of the grant, and is now barred by the lapse of time.

The plaintiff claims that the covenant is a continuing covenant running with the land, and that a right of action constantly accrues for its enforcement. I am of the opinion that a cause of action to enforce the construction upon the dam of a crossway eighteen feet wide, as prescribed by the grant, accrued upon failure of Townsend within a reasonable time to perform that covenant; and that a continuous right to enforce the cause of action has not existed down to the present time.

It may be, however, if it could be shown that the covenant had once been complied with, that the right to have the crossway maintained as erected, in pursuance of the grant, would be a continuous right and could be asserted and enforced now; but in this case there never was any compliance whatever with the covenant.

From the fact that the covenant was never complied with in accordance with its terms, and that 125 years have elapsed, and during that time there never has been any action on the part of the town authorities to enforce its performance, and, so far as it appears, no complaint has ever been made because of its non-performance, the presumption arises that the town waived its performance. The reasons for such waiver may not be now apparent, but the performance

of the covenant was seemingly of so much importance to the inhabitants of the town that the failure of the town to enforce it, or to complain of its non-performance, justifies the conclusion that for some sufficient consideration the millowner was relieved from its performance.   At all events, it seems to me the burden is upon the town to explain its non-action and silence, and that burden has not been met upon this trial.

If I were to decide, however, that the Statute of Limitations did not apply, and that there had been no waiver on the part of the town, I think this is not a case where the specific performance of this covenant should be enforced.   The granting or withholding of a specific performance of a contract is within the discretion of the court, and it will not be granted when it is against equity and good conscience to do so.   It appears by the plaintiff's evidence that it would cost about $3,000 to put the dam in condition for travel.   To impose this burden upon the present owner would amount to a practical confiscation of his property.   When the grant was made to Townsend, and for many years thereafter, the milling privilege was a very valuable one; at the present time it is of but little value. The property has been transferred from time to time in its present condition, and without any express notice on the part of the town that the covenant might be enforced.   It would be exceedingly unjust and oppressive, in the present changed condition of affairs, to impose upon the present owner, who, if not legally, is morally an innocent purchaser, a burden which, in effect, would deprive him of his property.

For these reasons I conclude that the plaintiffs are not entitled to the relief demanded in their complaint, and the complaint must be dismissed, with costs.